588 So.2d 502 (1991)
Leonard Lavon HAYES
v.
STATE.
CR 89-1194.
Court of Criminal Appeals of Alabama.
March 1, 1991.
On Return to Remand April 11 and May 31, 1991.
Rehearing Denied July 26, 1991.
Certiorari Denied October 18, 1991.
*503 Gary D. Porter, Mobile, for appellant.
Don Siegelman, Atty. Gen., and P. David Bjurberg, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 1901703 and 1901704.
BOWEN, Judge.
Leonard Lavon Hayes, the appellant, was convicted of leaving the scene of an accident in violation of Ala.Code 1975, § 32-10-1, and was sentenced to 15 years' imprisonment. At the same trial, he was also convicted of criminally negligent homicide in violation of Ala.Code 1975, § 13A-6-4, and was given a concurrent sentence of one year in prison. The appellant raises three issues on this appeal from those convictions.

I.
The appellant argues that the trial court committed reversible error in consolidating indictments for the two offenses without the appellant or his attorney being present.
The State filed a motion to consolidate on December 21, 1989. The certificate of service indicates that a copy of that motion was served on defense counsel. The motion was granted by the trial judge on January 26, 1990. The minute entry for that date states:
"This day in open court came the State of Alabama by its District Attorney and the Motion to Consolidate Offenses filed by the State, December 21, 1989, coming on to be heard and being understood by the court; It is ordered and adjudged by the Court that the Motion ... is granted."
The appellant was tried for both offenses on May 16, 1990.
The record contains no other information relating to this issue. Defense counsel made no objection to the consolidation on *504 any ground at trial. This issue is raised for the first time on appeal.
The requirement of Rule 15.3(b), A.R.Crim.P.Temp. (now combined with Rule 15.4(b), A.R.Crim.P.Temp., in Rule 13.3(c), A.R.Crim.P.), that the defendant be given an "opportunity to be heard" prior to the granting of a motion to consolidate "is satisfied when the defendant[] and the prosecutor are provided with notice of the proposed or requested consolidation and given time in which to object. [This rule] does not require either an adversarial hearing or oral argument." Sharpe v. State, 560 So.2d 1107, 1110-11 (Ala.Cr.App.1989). Strict compliance with Rule 15.3(b) is required because the opportunity to be heard on the question of consolidation is considered a critical stage of the proceedings at which the accused is entitled to the effective assistance of counsel. See Ex parte Jones, 473 So.2d 545, 546 (Ala.1985).
While neither appellant's trial counsel nor his appellate counsel has claimed that trial counsel did not receive notice of the motion to consolidate, it does appear from the record on appeal that the trial judge "heard" the motion in open court when only the district attorney was present. There is no indication that the appellant or defense counsel waived their presence at this "hearing" if, indeed, there actually was such a hearing. Under Jones and pursuant to the demands of Rule 15.3(b), it must be recognized that if there was a hearing on the motion to consolidate, the appellant and his counsel had a right to be present.
Under the circumstances of this case, this cause must be remanded to the trial court with directions that a hearing be conducted in the presence of all parties, unless the presence of any particular party is waived and the waiver is placed on the record. We request that the following questions be answered in a written order by the trial judge: 1) What actually occurred in open court on January 26, 1990, when the trial court granted the motion to consolidate? 2) Did defense counsel receive notice of the State's motion to consolidate prior to the granting of the motion? 3) Did defense counsel, having had notice of the motion, fail to object to the consolidation both before and after the motion was granted? As an alternative to an evidentiary hearing, the parties may enter into a stipulation of facts. We encourage the trial judge and the parties to place in the record any other material and relevant facts and circumstances surrounding this issue. The transcript of the evidentiary hearing, or the stipulations, as well as the written findings of the trial judge, shall be forwarded to this Court within 60 days from the date of this opinion.

II
The appellant argues that the prosecutor erred in arguing facts not supported by the evidence.
During the course of the prosecutor's closing argument to the jury, the following occurred:
"MR. HARRISON [assistant district attorney]: I submit to you that it wasn't Angie who started the altercation out here. It was the defendant and it really started inside there when he started hitting on her and just continued out here.
"MR. RIVERS [defense counsel]: Your Honor, I'm going to object. There is no testimony my client said one word to her. I've taken enough of it. He didn't say a word to her and no testimony to that. None.
"MR. HARRISON: I'm arguing inferences, Judge.
"THE COURT: He has a right to draw inferences and conclusions, but I'll charge the jury."
Near the very beginning of his oral instructions to the jury, the trial judge specifically charged that "if either lawyer has argued to you inferences or conclusions from the facts different from what you yourself would draw then I tell you to totally disregard it and be guided by what you remember the facts to be and the inferences and conclusions that you would draw."
The homicide occurred in the parking lot of Gordon's Supper Club in Mobile County. The victim, Anjeanette ("Angie") Woodward, *505 and Helen Tice had been inside the club from approximately 3:30 until 7:00 on the morning of February 19, 1989. According to Ms. Tice, about ten minutes before they left, the victim repeatedly told her that "she had to talk with this man" who was standing or waiting by the doorway. The two women went to the restroom and when they came out, the "man" was gone. That man was later identified as the appellant.
Ms. Tice and the victim walked out of the club into the parking lot. The appellant's automobile was "just [slowly] rolling through the parking lot" approaching them. Ms. Tice testified that the appellant "was waiting for us to come out," and that "Angie told me, she said, I've got to go talk toshe called him an asshole."
The victim walked to the appellant's automobile and the automobile stopped. Ms. Tice testified that the appellant "stopped the car to talk to" the victim and that something was said between the victim and the appellant. There was also evidence that the appellant pulled up beside the victim and said something to her as she was walking through the parking lot. There was testimony that "Angie and the boy in the car were having words" and "fussing." The "way they were acting" it appeared that a "fight was fixing to go on."
The next thing Ms. Tice observed was the victim "coming back with her purse like she was going to hit the person in the car. And when she did she just started struggling in the car like she was trying to get her purse because her purse was in the car." The appellant accelerated toward the highway, dragging the victim; the victim fell off the car.
When the appellant turned the curve in front of the club, Ms. Tice saw the victim "hanging on and [the appellant's] arm on hers." Other testimony indicated that the appellant was "holding with his arm on her arm." The victim fell off the car and died as a result of blunt force injuries to her head.
Ms. Tice testified that the victim did not tell her why she called the appellant an asshole.
"It seemed to me that she was getting a bit agitated with him because she had [to] talk to him and he was waiting for her to talk to him. More or less like she really didn't want to talk to him but was going to. Now, this is just my opinion. "Well, it was just like she was wanting to hurry up and talk to him and go on. She wasn't really agitated. It was just she said, I've got to go talk to this guy, I've got to go talk to this guy.
"... I said it seemed like to me that she wanted to speak to this man and get it over with. [She] was not agitated, was not irritated. She was in a great mood. But she was like, I've got to go talk to this guy."
Ms. Tice testified that she never saw the victim talk to the appellant until they were in the parking lot.
The appellant testified that he did not see or talk to the victim inside the club. He claimed that the victim approached him in the parking lot and started "cussing." As he drove away, she ran after his car trying to hit him with her purse. The appellant testified that he had no knowledge of any accident until that evening.
The prosecutor argued that the appellant started the altercation by hitting on the victim inside the club. There is no evidence that the appellant struck the victim inside the club. The phrase "hit on" also means "to make persistent sexual advances to." The Random House Dictionary of the English Language 907 (2d ed. 1987). There is no evidence that the appellant "hit on" the victim in that sense either. There was no direct evidence of any conversation between the victim and the appellant inside the club.
"It has been uniformly held that counsel should have wide latitude to draw reasonable inferences from the evidence but should not be allowed to argue as a fact that which is not supported by the evidence." Brown v. State, 374 So.2d 391, 394 (Ala.Cr.App.), affirmed, 374 So.2d 395 (Ala.1979). Whether an inference is reasonable *506 is generally within the sound discretion of the trial judge. Ainsworth v. State, 501 So.2d 1265, 1268-69 (Ala.Cr. App.), reversed on other grounds, 501 So.2d 1269 (Ala.1986).
While it appears that the prosecutor's comment in this case is based on little more than sheer speculation, "[i]t is not every improper remark to which objection is not sustained which will require a reversal." Flint v. State, 370 So.2d 332, 334 (Ala.Cr.App.1979). "The statement of counsel must be made as of fact unsupported by evidence, and `must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury.'" Anderson v. State, 209 Ala. 36, 43, 95 So. 171, 179 (1922).
We simply do not consider the prosecutor's comment in this case so prejudicial as to require a reversal of the appellant's convictions. This conclusion is based on the following considerations: The prosecutor himself stated that the argument was an "inference." Defense counsel objected and stated that there was no evidence of that. The evidence in this case certainly justifies the inference that the victim had some type of "unfinished business" with the appellant. Immediately after the prosecutor's closing argument, the trial judge instructed the jury and, very early in those instructions, charged the jury to "totally disregard" any inference drawn by the attorneys with which they did not agree. "There is no horizontal rule by which these qualities (the prejudicial qualities of improper remarks in argument to the jury) can be ascertained in all cases. Much will depend upon the issues, the parties, and the general atmosphere of the case." Mitchell v. State, 18 Ala.App. 471, 472, 93 So. 46, 47, cert. denied, 208 Ala. 699, 93 So. 923 (1922).

III
From the record before this Court, it appears that the appellant was improperly sentenced under the Habitual Felony Offender Act.
The first mention of any prior conviction appears in the record of the sentencing hearing, where the trial judge stated: "I have read the presentence investigation report in each one of these cases and really I see nothing in the presentence investigation report that I didn't know already except for the prior offenses that he has." The presentence investigation report shows that the appellant had a 1982 Mississippi conviction for grand larceny with a three-year suspended sentence and a 1979 Alabama arrest for the possession of marijuana. The prosecution presented no proof of the Mississippi conviction, which was revealed only by the presentence investigation report.
Although the trial judge did not specifically state that he was sentencing the appellant as a habitual felon, he sentenced the appellant to 15 years' imprisonment for leaving the scene of an accident, a Class C felony. Ala.Code 1975, § 32-10-6. The statutory penalty for this offense is "not more than 10 years or less than 1 year and 1 day." Ala.Code 1975, § 13A-5-6(a)(3). The punishment for that same offense with one prior felony conviction is not more than 20 years nor less than two years. § 13A-5-9(a)(1); § 13A-5-6(a)(2). Therefore, we can only conclude either that the appellant was sentenced as a habitual felon with one prior felony conviction or that the trial court imposed a sentence in excess of that authorized for a first-time offender.
Rule 6(b)(3)(ii), A.R.Crim.P.Temp., provides: "At a reasonable time prior to the [sentence] hearing the defendant shall be given notice of the prior conviction or convictions upon which the State intends to proceed." See Rule 26.6(b)(3)(ii), A.R.Crim.P. "[T]he Habitual Felony Offender Act cannot be applied if the defendant was not given proper notice before the first sentencing hearing." Jackson v. State, 566 So.2d 758, 760 (Ala.1990); Accord, Ex parte Williams, 510 So.2d 135, 136 (Ala.1987); Ex parte Glover, 508 So.2d 218, 220 (Ala.1987).
In this case, defense counsel made no objection at sentencing. However, "when a sentence is clearly illegal or is clearly not authorized by statute, the defendant does not need to object at the trial level in order to preserve that issue for appellate review." *507 Ex parte Brannon, 547 So.2d 68 (Ala.1989).[1]
This cause is remanded to the trial court for proper sentencing. As the record currently stands, under the cases of Jackson, Williams, and Glover, the Habitual Felony Offender Act cannot be applied. The appellant must be sentenced for the Class C felony of leaving the scene of an accident as a first-time offender under § 13A-5-6(a)(3). However, if it can be shown that the appellant was given proper notice of the prior Mississippi conviction, even though such notice does not appear in the record on appeal, then the appellant should be sentenced, upon proper proof of that conviction, for a Class B felony under § 13A-5-6(a)(2) as a habitual felony offender with one prior conviction. § 13A-5-9(a)(1). A return shall be made to this Court evidencing the sentencing of the appellant in accordance with this opinion.
This cause is remanded with directions as stated in Parts I and III of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
This cause was remanded to the trial court in connection with the issues of consolidation and sentencing. On remand, the trial court conducted an evidentiary hearing.

I.
On appeal, the appellant alleged for the first time that the trial court erred in granting the State's motion to consolidate the two indictments without the appellant or his attorney being present.
It is undisputed that defense counsel received a copy of the State's motion to consolidate. The certificate of service of that motion is dated December 21, 1989. This motion was granted by the trial court on January 26, 1990. It appears that defense counsel did not receive notice of the "hearing" held on that date. The appellant's trial was reset on February 14, 1990, and again on April 2, 1990, at the request of the State. On each occasion, defense counsel was present in court. The appellant was tried on May 16, 1990.
At the evidentiary hearing, no one had any recollection or knowledge of what actually occurred at the "hearing" on January 26 when the motion was granted. However, the trial judge did state:
"[S]o the question of whether the Defendant was or was not in court, it is frequently happens on motions to consolidate, and I don't know how anyone could possibly argue that these offenses should not have been consolidated, L.S.A. and criminal negligent homicide, arising out of the same set of facts, but in any event it frequently occurs that the lawyer will come and say, Judge, we object. Do you have any legal grounds to object? No, but we object. And I simply say granted. I cannot say for the record that that occurred in this case.
"I got the bench notes ... for that particular day and the only thing it shows is Leonard Lavon Hayes, criminal negligent homicide, and on that day a motion to consolidate and it simply says `Granted.' It does not say whether Mr. Rivers was or was not in court, but I have taken the position that if they're not in court they have nothey have waived that right and, in any event, I have also taken the position, and, of course, everything I'm saying is for the record, that certainly at the day of trial they still have a right to object.
"THE COURT: That is, I ask the attorney for the Defendant, Do you have any legal grounds why they shouldn't be consolidated, because there are some, and the attorney for the Defendant says, No, but I object to them being consolidated. Doesn't that occur on
*508 "MR. RIVERS [defense counsel]: Frequently.
"THE COURT: All right. So, I see nothing else I can put in the record on that."
Defense counsel stated that he did not disagree with the statement of the trial judge, that everything the trial judge stated was correct, and agreed that "that's the usual procedure."
Defense counsel stated that if he had to speculate, he "guessed" that he first learned that the State's motion to consolidate had been granted on the day of the trial. When asked if he had any grounds on which he could have contested the consolidation, defense counsel replied, "I don'tI can't think of any right now, you know. I may if I do some research, but I don't have...."
With regard to the joinder and consolidation of defendants, the Alabama Supreme Court has held:
"The rule [Rule 15.4(b), A.R.Crim. P.Temp.] is mandatory when stating `the court shall not order that the defendants be tried together without first providing the defendants and the prosecutor an opportunity to be heard.' (Emphasis added.) Affording an opportunity to move for severance after consolidation fails to cure the prejudicial error resulting from violation of the rule.
"As asserted by petitioners, they have a right to effective assistance of counsel at all critical stages of the proceedings against them. Amendment VI, Const. of U.S. Every lawyer experienced in representing persons charged with crimes knows it to be crucial to defense strategy and tactics that he is aware of whether his client is to be tried alone or with another.
"We today hold that the purpose of Rule 15.4(b), Alabama Temporary Rules of Criminal Procedure, can only be served by strict compliance with it."
Ex parte Jones, 473 So.2d 545, 546 (Ala. 1985). This holding applies equally to Rule 15.3, A.R.Crim.P.Temp., concerning the joinder and consolidation of offenses. See Rule 13.3, A.R.Crim.P. However, in this case, the issue was not preserved for appellate review. The record on return to remand shows that defense counsel had the opportunity to object both to the manner in which the motion to consolidate had been granted and to the merits of the consolidation.
We hold that an appellant waives any issue concerning the alleged improper consolidation of charges for trial where he learns before trial that the charges have been consolidated, fails to make any objection in the trial court to that consolidation, and raises the issue for the first time on appeal. "[E]ven constitutional rights have to be raised seasonably in the trial court." Fuller v. State, 269 Ala. 312, 326, 113 So.2d 153, 165 (1959), cert. denied, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).

II.
The record on return to remand shows that the appellant was sentenced as a habitual felony offender and that he was not given notice of the prior conviction at a reasonable time prior to the sentencing hearing. Even if the appellant did not request a presentence report under Rule 3, A.R.Crim.P.Temp., he must have been given notice at a reasonable time prior to the sentencing hearing of the prior conviction upon which the State intended to proceed, Rule 6(b)(3)(ii), A.R.Crim.P.Temp. Therefore, the appellant's sentence of 15 years' imprisonment is set aside. This cause is remanded with directions that the trial court sentence the appellant for the Class C felony of leaving the scene of an accident as a first-time offender under Ala.Code 1975, § 13A-5-6(a)(3). The trial court shall make a return to this Court within 45 days from the date of this opinion reflecting proper sentencing.
OPINION EXTENDED; REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
This Court remanded this cause with directions that the trial court sentence *509 the appellant for the Class C felony of leaving the scene of an accident as a firsttime offender. On remand, the trial court sentenced the appellant to ten years' imprisonmentthe maximum term of imprisonment for a Class C felony. We agree with the trial court that "there is no way any court could give less time for [this offense] under the circumstances of this case."
The judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
NOTES
[1] The continued validity of the dicta in Phillips v. State, 518 So.2d 833, 834 (Ala.Cr.App.1987), and Nichols v. State, 480 So.2d 82, 85 (Ala.Cr. App.1985), that the failure to object to the State's failure to give proper notice under the Habitual Felony Offender Act constitutes a waiver of that issue is questionable in light of Ex parte Brannon, 547 So.2d 68 (Ala.1989).