The appellant, Herbert Williams, Jr., was convicted of the robbery and murder of Timothy Hasser, made a capital offense because the murder was committed during the course of a robbery. Section 13A-5-40(a)(2), Code of Alabama 1975. The appellant, a 19-year-old at the time of the offense, requested and was denied treatment as a youthful offender. The jury, in a nine to three vote, recommended a sentence of life in prison without the possibility of parole. The trial court overrode the jury's recommendation and sentenced the appellant to death by electrocution.
On appeal, the appellant does not question the sufficiency of the evidence; thus we will only briefly recite the facts presented at trial. The state's evidence tended to show the following: On November 2, 1988, the body of the victim, Timothy Hasser, was found in the back of his 1980 Porsche automobile. He had been shot three times in the head. Officer Mark Harrell, of the Jackson Police Department, stated that he was on routine patrol on the evening of November 2, 1988, when he spotted a white Porsche in the emergency lane on Highway 43, by the McCorquodale Bridge, near the city of Jackson, in Alabama. Harrell approached the car, and a man, who Harrell identified as the appellant, exited from the driver's side. The appellant told the officer that he had a "lemon of a car" and that he needed to go to a gasoline station. Officer Harrell followed the appellant to a nearby station. While he was following the Porsche, Harrell noticed a thick dark liquid, which he later identified as blood, dripping from the rear hatchback area of the car. Harrell also noticed that the appellant was not familiar with the standard transmission in the Porsche. When they arrived at the station, Harrell asked the appellant for his driver's license. While the officer was standing beside the car, he looked in the car and saw a white male covered with blood lying unconscious in the hatchback portion of the car. Harrell asked the appellant what had happened to the man. The appellant said that he had been in a fight. Upon closer inspection, Harrell determined that the man was dead. Weights were attached to each of the dead man's ankles and his face and hair were saturated with blood. Officer Harrell then handcuffed the appellant and read him his Miranda[1] rights three separate times. He said that the appellant did not appear to be under the influence of drugs or alcohol and that no offer of reward was made to him in order to induce him to make a statement. At this time, the appellant stated that he and the victim had been involved in a drug deal in Demopolis which had gone "sour." Drug dealers shot the victim and told the appellant that he could live because he was a black man. One of the dealers handed the appellant the gun, a .38 caliber handgun, and told him to dispose of the body. The appellant further stated that the gun was under the front seat of the car and that his fingerprints were "all over it." A search made of the appellant's person revealed six empty cartridges in his pocket. Some of the clothes that the appellant was wearing were also taken into custody. The blood on the clothes was identified as the same type as the victim's.
The appellant made three statements to the police. The details of the statements varied, although in each statement the appellant maintained that the victim was shot by drug dealers. Assistant Chief Charles Burge of the Jackson Police Department testified that the appellant made a statement to him when the appellant arrived at the police station on the evening of November 2, 1988. The statement made by the appellant at this time was similar to the statement he made to Officer Harrell. Assistant Chief Burge also testified that pursuant to a search warrant he had searched the appellant's home. The appellant was living with his aunt at the time of the murder. A search of the appellant's bedroom revealed a book entitledNew I.D. in America, a personal diary, and weights similar to those found on the victim. Captain Burge read the following excerpts from the diary found in the room in which the appellant had been living:
 " 'Sunday, October 30, 1988. I will search this house for that gun. If I find it Monday, then I'm going to catch Larry to Prichard [sic]. I'll then walk to my destination *Page 988 
If the car is not there, well, I will break in from the back and wait. After doing the job, leave the place in my new car. Come back after I have gotten the gears right, load up and dump the body.'
". . . .
 " 'Monday, the 31st, 1982 [sic], Porsche 928, dump body, Tuesday, one, get as much money as I can, get car,' R-E-G, abbreviated, 'from Chatom, go Dixon Mills, hit Pine Hill.' "
Investigator Michael Barnett, with the Alabama Bureau of Investigation, testified that two days after the murder, the appellant asked to speak with him. After Barnett apprised the appellant of his Miranda rights, the appellant gave him a detailed statement of his movements for several days before the murder and of his efforts to dispose of the body. In this statement the appellant said that he and the victim had been involved in several drug deals in the past. He stated that after this one big deal, the victim told him that he would give him his Porsche and $7,500.00. The appellant also stated that the victim had been shot by drug dealers who had allowed him, Williams, to live.
Evidence from several witnesses established that the appellant had told them that someone "owed" him a Porsche automobile. One witness also stated that the appellant asked him to help him scare the victim into giving the appellant his Porsche. The appellant was also seen with a gun on the afternoon of the murder. Evidence also revealed that the appellant had been in the victim's home prior to the murder. His fingerprints were found in the victim's attic. In one statement the appellant told police that he had broken into the home of the victim and that when the burglar alarm went off he hid in the attic.
Evidence was also presented that the appellant wrote out a confession while he was in jail several days after his arrest. Captain Vincent Richardson of the Mobile Police Department testified that Golliday Miller, who had been in the same cell as the appellant, called the Police Department and asked to meet with the investigators who were in charge of the Hasser murder. Captain Richardson and another officer met with Miller. Miller gave them a copy of a confession written, he claimed, by the appellant. The confession was later identified by a handwriting expert as having been written by the appellant. In this confession, the appellant wrote that he had been forced to shoot the victim by drug dealers. The dealers held a gun to his head and said that if he didn't shoot Hasser, they would shoot him. The other details were similar to those in the other three statements made by the appellant. Richardson stated that Miller was not working for the state and that the state made no deal with him to get a statement from the appellant. The appellant presents the following issues on appeal.
 I
Initially, the appellant contends that the trial court erred in permitting the confession, identified as having been written by the appellant, to be received into evidence. He cites several reasons for this argument. First, he contends that there was no showing that he was read his Miranda rights prior to the statement's being written. Secondly, the appellant maintains that since Miller did not testify at trial, his right to confront his accusers, as guaranteed by the Sixth Amendment, was violated. The record reflects that Miller approached the police with a confession he maintained was written by the appellant. At the motion hearing to suppress the confession, Miller was called to the stand and refused to testify. Captain Richardson testified several times that Miller was not working with them to obtain any confession from the appellant and that no promises were made to Miller to obtain the confession.
Prior to the admittance of a confession made to law enforcement officers, the prosecution must prove that the statement was voluntary and that the appellant was given hisMiranda rights. See Holder v. State, on return to remand,584 So.2d 872 (Ala.Cr.App. 1991); Magwood v. State, 494 So.2d 124
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala.), cert. denied,479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). However, these constitutional safeguards do not apply when a statement has been made to a person *Page 989 
who is not an law enforcement officer. "According to Terry v.State, 397 So.2d 217 (Ala.Cr.App. 1981), Miranda warnings are not required in instances where inculpatory or otherwise admissible statements are made to persons who are not law enforcement officers or their agents." Warrick v. State,460 So.2d 320, 323 (Ala.Cr.App. 1984). See also Connolly v. State,500 So.2d 57 (Ala.Cr.App. 1985), aff'd, 500 So.2d 68 (Ala. 1986); Traylor v. State, 439 So.2d 178 (Ala.Cr.App. 1983). InIllinois v. Perkins, 496 U.S. 292, 110 S.Ct. 2394,110 L.Ed.2d 243 (1990), the defendant made a statement to a cellmate who was in fact an undercover police officer. The United States Supreme Court held that the statement should have been received into evidence. The Supreme Court stated:
 "The warning mandated by Miranda was meant to preserve the privilege during 'incommunicado interrogation of individuals in a police-dominated atmosphere.' That atmosphere is said to generate 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' 'Fidelity to the doctrine announced in Miranda requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.' Berkemer v. McCarty, 468 U.S. 420, 437, 104 S.Ct. 3138, [3148] 82 L.Ed.2d 317 (1984)."
Perkins, 110 S.Ct. at 2397. (citations omitted.)
As the court further stated in Perkins, the atmosphere is different when the statement is made to a fellow inmate:
 "The essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone that he believes to be a fellow inmate. . . . It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation."
Perkins, 110 S.Ct. at 2397.[2]
The appellant also maintains that his right to confront his accusers was violated. The appellant's main contention is that he did not have the opportunity to cross-examine Miller about any possible relationship or arrangement which Miller might have had with the police. He further contends that Captain's Richardson's testimony concerning Miller's relationship with the police was hearsay. The appellant did not present this objection at trial. However, because this is a case involving the death penalty, we are obliged to search the record for plain error. "To constitute plain error the error must be so 'egregious as to "seriously affect the fairness or integrity of the judicial proceedings." ' " Williams v. State,601 So.2d 1062, 1074 (Ala.Cr.App. 1991).
As this court stated in Anderson v. State, 362 So.2d 1296
(Ala.Cr.App. 1978): "The accused has a constitutional right of confrontation and cross-examination which is an essential and fundamental requirement of a fair trial." Anderson, 362 So.2d at 1301, citing Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065,13 L.Ed.2d 923 (1965); Douglas v. Alabama, 380 U.S. 415,85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); Mattox v. United States,156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895). The right to confront one's accusers is also guaranteed by our state constitution. See Ala. Const. of 1901, art. I, § 6. See alsoBenton v. State, 31 Ala. App. 338, 18 So.2d 423 (1944), cert. denied, 245 Ala. 625, 18 So.2d 428 (Ala. 1944). See alsoBuckelew v. State, 48 Ala. App. 411, 265 So.2d 195 (Ala.Cr.App. 1972), cert. denied, 409 U.S. 1060, 93 S.Ct. 558,34 L.Ed.2d 512 (1972).
The right to confront one's accusers as prescribed by the sixth amendment guarantees the right to "face-to-face encounter[s] between witness and accused." Coy v. Iowa,487 U.S. 1012, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988). The rationale behind *Page 990 
the right to confrontation is to attempt to ensure the integrity of the trial process by making it more difficult to lie when the witness has been placed before the accused. SeeCoy.
The right to confrontation has generally come before the courts either in regard to out-of-court statements 'hearsay' or restrictions on cross-examination. See Coy, supra. "The admission of hearsay evidence against a defendant implicates the sixth amendment because the defendant cannot confront theout of court declarant." Twentieth Annual Review of CriminalProcedure 79 Geo.L.J. 957, 1068 (1991). (Emphasis added.)
 "The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . . the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. See Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255
(1968). See also Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900); California v. Green, 399 U.S. [149], at 161-162, 165, 167 n. 16, 90 S.Ct. [1930], at 1936-1937, 1938, 1939, n. 16 [26 L.Ed.2d 489 (1970)].
 "The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure form the reason of the general rule.' (citation omitted)."
Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538,65 L.Ed.2d 597 (1980). See also United States v. Morgan,757 F.2d 1074 (10th Cir. 1985).
 "The defendant's Sixth Amendment right of confrontation . . . limits the prosecution's use of statements of persons who do not testify at trial
and therefore cannot be cross-examined. Such statements, when offered for their truth, ordinarily constitute hearsay. . . . The crucial question under the confrontation clause is not compliance with common law hearsay rules, but fulfillment of the 'mission of the confrontation clause to advance the accuracy of the truth determining process * * * by assuring that the trier of fact has a satisfactory basis for evaluating the truth of a prior statement.'"
LaFave, Criminal Procedure § 23.3(d) (1984). (Emphasis added.) As the cases above illustrate, the crucial ingredient necessary to activate the confrontation clause when hearsay is involved is the presence of a "statement made by a person who does not testify at trial." See Lafave, supra. In the instant case we are not dealing with a statement made by an out-of-court declarant. The evidence presented was not a verbal statement made by Miller but a handwritten statement identified as having been written by the appellant. The document received into evidence was not hearsay. No violation of the confrontation clause occurred here.
Neither is this a situation where the evidence presented is "highly suspect," because the writing was identified as that of the appellant not by the informant who turned over the writing to the authorities, but by another witness, a handwriting expert who did testify. In Lee v. Illinois, 476 U.S. 530,106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the United States Supreme Court was faced with a situation in which a confession of a codefendant was received into evidence without the codefendant's testifying at trial. The Supreme Court stated:
 "Our cases recognize that this truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination. As has been noted, such a confession 'is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. . . . More than this, however, the arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his *Page 991 
strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.'
". . . .
 ". . . This holding, on which the Court was unanimously agreed, was premised on the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination."
Lee, 476 U.S. at 541, 106 S.Ct. at 2062. (Emphasis added.)
"The right to confront a witness arises only when that witness inculpates a defendant." United States v. Daly,756 F.2d 1076, 1081 (5th Cir. 1985), cert. denied, 474 U.S. 1022,106 S.Ct. 574, 88 L.Ed.2d 558 (1985), citing Chambers v.Mississippi, 410 U.S. 284, 297-98, 93 S.Ct. 1038, 1047,35 L.Ed.2d 297, 310 (1973). Another reason the right to confrontation issue is not appropriate in the present case is because the statement concerned not what Miller had said about the appellant but what the appellant had written about himself.
The appellant also contends that the evidence concerning the police's relationship with Miller was hearsay. The evidence presented by Captain Richardson concerning Miller's relationship with the police was not hearsay. Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. See C. Gamble, McElroy's Alabama Evidence
§ 242.01 (4th ed. 1991). Richardson's knowledge of the police's relationship with Miller was not based on what someone else had told him but on what he knew from firsthand knowledge. There was no hearsay here.
 II
The appellant next contends that the circuit court incorrectly charged the jury on reasonable doubt. Specifically, the appellant contends that the instruction violated the Supreme Court's holding in Cage v. Louisiana, 498 U.S. 39,111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The trial court gave the following instruction on reasonable doubt:
 "I tell you, however, that if the State proves the Defendant guilty beyond a reasonable doubt, then it has proven him guilty to a moral certainty. The terms 'beyond a reasonable doubt' and 'to a moral certainty' are synonymous — they mean the same thing.
 "In order to justify an acquittal, you must have an actual and substantial doubt and not a mere possible doubt. A reasonable doubt is not a mere guess or surmise. It is not a forced or capricious doubt. If after considering all the evidence in this case you have an abiding conviction of the truth of the charge, then you are convinced beyond a reasonable doubt. And it would be your duty to convict the Defendant.
 "A reasonable doubt which entitles the Defendant to an acquittal is not a mere vague or speculative doubt, but a reasonable doubt arising from all the evidence, part of the evidence, or lack of evidence and remaining after careful consideration of all the testimony. Simply stated, a reasonable doubt is a doubt for which a reason exists. It is such a doubt that fairminded, conscientious men and women would entertain after considering all the facts and circumstances again which you heard in this case."
The appellant maintains that the emphasized portion of the court's charge on reasonable doubt violated his due process rights because it imposed a higher standard of proof of guilt than what is constitutionally mandated. We have long held that we will not review an instruction in isolation but will consider it with the charge as a whole. See Williams v. State,538 So.2d 1250 (Ala.Cr.App. 1988); Lambeth v. State,380 So.2d 923 (Ala.), on remand, 380 So.2d 925 (Ala.Cr.App. 1979).
The United States Supreme Court, in a recent memorandum decision, stated that the language it found to be offensive inCage, was the term "grave uncertainty." The Court stated: *Page 992 
 "In Cage, the jury was instructed that a reasonable doubt 'must be a doubt as would give rise to a grave uncertainty. . . .' Id. 498 U.S. at 40, 111 S.Ct. at 329. Because the instructions to the jury in this case did not contain this improper language, the question whether Cage announced a new rule is not actually presented here."
Gaskins v. McKellar, ___ U.S. ___, 111 S.Ct. 2277,114 L.Ed.2d 728 (1991) (Emphasis added.)
The term "actual and substantial doubt" also appeared inCage. Recently this court reviewed an instruction which contained the phrase "actual and substantial doubt." As this court stated, "The mere use of some terminology which happened to also appear in Cage, does not necessarily constitute reversible error." Earhart v. State, 593 So.2d 119, 120
(Ala.Cr.App. 1991); Williams v. State, 601 So.2d 1062
(Ala.Cr.App. 1991); Adams v. State, 587 So.2d 1265 (Ala.Cr.App. 1991). Ex parte White, 587 So.2d 1236 (Ala. 1991).
It is apparent from a review of the court's instruction on reasonable doubt that the instruction in no way violated the appellant's due process rights. The court's definition of reasonable doubt was thorough and accurate. The language in the instant case does not contain the language that the Court found offensive in Cage. See Gaskins, supra. The court committed no error in its instructions on reasonable doubt.
 III
The appellant next contends that the trial court erred in overriding the jury's recommendation and sentencing him to death by electrocution. In Alabama, the trial of an accused who faces the death penalty is actually a three-step process. There is a trial to determine guilt, a sentencing proceeding in which the jury recommends either life without parole or death; and the imposition of a sentence imposed by the court. The sentence endorsed by the jury is a recommendation. The Alabama death penalty statute explicitly permits the circuit court to override the jury's recommendation if the aggravating circumstances outweigh the mitigating circumstances. See §13A-5-47, Code of Alabama 1975. The United States Supreme Court in Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154,82 L.Ed.2d 340 (1984), held that individual states may constitutionally vest in the circuit court the power to override the recommendation of the jury and sentence a defendant to death. See also Crowe v. State, 485 So.2d 351
(Ala.Cr.App. 1984), rev'd on other grounds, 485 So.2d 373 (Ala. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3284,91 L.Ed.2d 573 (1986). The circuit court judges of this state have on many occasions sentenced a defendant to death when the jury has recommended life in prison without the possibility of parole. See Freeman v. State, 555 So.2d 196 (Ala.Cr.App. 1988), aff'd555 So.2d 215 (Ala. 1989), cert. denied, 496 U.S. 912,110 S.Ct. 2604, 110 L.Ed.2d 284 (1990); Hooks v. State,534 So.2d 329 (Ala.Cr.App. 1987), aff'd, 534 So.2d 371 (Ala. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989);Hays v. State, 518 So.2d 749 (Ala.Cr.App. 1985), aff'd in part and rev'd in part, 518 So.2d 768 (Ala. 1986), cert. denied,485 U.S. 929, 108 S.Ct. 1099, 99 L.Ed.2d 262 (1988); Tarver v.State, 500 So.2d 1232 (Ala.Cr.App.), aff'd 500 So.2d 1256 (Ala. 1986), cert. denied, 482 U.S. 920, 107 S.Ct. 3197,96 L.Ed.2d 685 (1987); Harrell v. State, 470 So.2d 1303 (Ala.Cr.App. 1984), aff'd, 470 So.2d 1309 (Ala. 1985), cert. denied,474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985); Jones v. State,456 So.2d 366 (Ala.Cr.App. 1983), aff'd, 456 So.2d 380 (Ala. 1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779,84 L.Ed.2d 838 (1985). (For a discussion of the authority of the court to override the recommendation of the jury see Annot., 8 A.L.R. 4th 1028 (1981).)
The appellant further argues that the circuit court erred in adopting a sentencing order drafted by persons employed by the district attorney. The record reflects that the court asked the district attorney to prepare two orders, one recommending life without parole and one recommending death. The trial judge stated that he wanted to think further before making his decision. The only order which appears in the record is the order signed by the court fixing the sentence at death. This allegation of error *Page 993 
will be evaluated under the plain error doctrine since no objection was made to this evidence at trial. See Rule 45A, A.R.App.P.
Even if the sentencing order was identical to one of the drafts submitted by the district attorney, no error would have occurred. As this court recently stated in Hubbard v. State,584 So.2d 895 (Ala.Cr.App. 1991):
 " '[E]ven when the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.' Anderson v. Bessemer City, North Carolina, 470 U.S. 564, 572, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 527 (1985). See also United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964) (verbatim findings are not to be summarily rejected and will stand if supported by the evidence); Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, Weeks v. Alabama, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990) (issue discussed in dicta); Morrison v. State, 551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990) (trial court's findings of fact and conclusions of law were not clearly erroneous and adoption of findings and conclusions was proper)."
Hubbard, 584 So.2d at 900. We recognize the common practice of directing the prevailing party to prepare an order for the court's adoption and signature. In a capital case, however, wholesale adoption of a draft prepared by the state gives rise to a legal issue of whether the findings and conclusions are in fact those of the court. We urge sentencing courts to prepare sentencing orders in a manner other than adoption of an order prepared by one of the litigants. However, we hold that no error occurred.
 IV
The appellant next asserts that his death sentence is cruel and unusual punishment and is therefore unconstitutional. The constitutionality of the death penalty has consistently been upheld. See Harrell, supra; Wright v. State, 494 So.2d 726
(Ala.Cr.App. 1985), aff'd 494 So.2d 745 (Ala. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 183 (1987);Lindsey v. State, 456 So.2d 383 (Ala.Cr.App. 1983), aff'd,456 So.2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023,105 S.Ct. 1384, 84 L.Ed.2d 403 (1985); Jackson v. State, 452 So.2d 895
(Ala.Cr.App. 1984); Luke v. State, 444 So.2d 393 (Ala.Cr.App.), aff'd, 444 So.2d 400 (Ala. 1983), cert. denied, 466 U.S. 993,104 S.Ct. 2374, 80 L.Ed.2d 846 (1984).
 V
Last, as required by § 13A-5-53, Code of Alabama 1975, we must address the propriety of the appellant's conviction and death sentence. The appellant was indicted and convicted of capital murder as defined in § 13A-5-40(a)(2), Code of Alabama 1975, murder during the course of a robbery.
The record reflects that appellant's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Section 13A-5-53(b)(1), Code of Alabama 1975.
A review of the record shows that the court weighed the aggravating and mitigating circumstances and found that the aggravating circumstance outweighed the mitigating circumstance. The trial court found as an aggravating circumstance that the murder was committed during the course of a robbery. Section 13A-5-49(4), Code of Alabama 1975. The trial court stated in its order:
 "The evidence, as stated previously, proved beyond a reasonable doubt, that the defendant was consumed with the notion of owning a Porsche and that obsession was the sole motivation for the robbery/murder of Timothy Hasser.
 "The Court, furthermore, attaches great significance to the calculated precision with which this crime was planned and systematically executed. The defendant's diary manifests a greed and depravity of mind characteristic of an individual who has an utter disregard for human life and the rights and property of others."
The court found, as a statutory mitigating circumstance, that the appellant had no significant history of prior criminal conduct. Section 13A-5-51(1), Code of Alabama 1975. *Page 994 
The court also stated in its sentencing order that as a nonstatutory mitigating circumstance it considered the appellant's background and upbringing. The appellant's father was "violent and abusive toward him as a child." After weighing the above circumstances, the trial court determined that the aggravating circumstance outweighed the mitigating circumstances. We agree with the trial court's findings.
As required by § 13A-5-53(b)(2), this Court must independently weigh the aggravating and the mitigating circumstances to determine whether the appellant's sentence was appropriate. After our own weighing of those circumstances, we are convinced that the appellant's death sentence is appropriate.
Last, as provided for by § 13A-5-53(b)(3), this court must also address the issue whether the sentence was either excessive or disproportionate to the crime. The appellant's sentence was neither. "In Beck [v. State, 396 So.2d 645 (Ala. 1981)] the Alabama Supreme Court noted that of the 50 cases it studied, 33, or 66%, were robbery-intentional killing cases." Colquitt, Death Penalty Laws, 33 Ala.L.Rev. 213, 225 (1982). See also Williams v. State, 601 So.2d 1062 (Ala.Cr.App. 1991);Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App. 1990), aff'd,577 So.2d 531 (Ala. 1991); Brownlee v. State, 545 So.2d 151
(Ala.Cr.App. 1988), aff'd, 545 So.2d 166 (Ala.), cert. denied,493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989).
We have also searched the record for any error which would have adversely affected the appellant's substantial rights and have found none. See Rule 45A, A.R.App.P.
The appellant's conviction and sentence to death are due to be, and they are hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] The statement would not be rendered inadmissible by the fact that the appellant did not waive his right to counsel because the appellant had not yet been indicted and the right to counsel does not attach until one has been indicted. See Hagoodv. State, 588 So.2d 526 (Ala.Cr.App. 1991).