ON APPLICATION FOR REHEARING
The appellant, Herbert Williams, Jr., was convicted of the robbery and murder of Timothy Hasser and was sentenced to death. We affirmed the appellant's conviction. Williams v.State, 627 So.2d 985 (Ala.Cr.App. 1991). The appellant has obtained new counsel to present a motion for rehearing and has filed a brief, which raises new issues. On our initial review of this case we searched the record for plain error and found none. Rule 45A, A.R.App.P. The appellant presents several issues on rehearing that we thoroughly discussed in our original opinion and that we will not discuss further on rehearing. However, we will address directly the new issues presented by the appellant for the first time in support of his motion for rehearing, because we realize that other appellate courts will review this death penalty case.
 I
The appellant initially contends that there were instances of prosecutorial misconduct in this case, which resulted in his being denied a fair trial. At every alleged instance of *Page 996 
prosecutorial misconduct cited by the appellant, no objection was made. Thus we must determine whether the error, if any, rises to the level of plain error. Has the error "adversely affected the substantial rights of the appellant?" Rule 45A, A.R.App.P.
When reviewing a statement made by the prosecutor, we must first examine it in the context of the entire proceedings.Stephens v. State, 580 So.2d 11 (Ala.Cr.App. 1990), aff'd580 So.2d 26 (Ala. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 176, 116 L.Ed.2d 138 (1991). Further, " 'the failure to object to improper prosecutorial arguments . . . should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful.' " Jenkins v. State,627 So.2d 1034 (Ala.Cr.App. 1992), quoting Kuenzel v. State,577 So.2d 474, 489 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531
(Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 242,116 L.Ed.2d 197 (1991). See also Dill v. State, 600 So.2d 343
(Ala.Cr.App. 1991). "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038,84 L.Ed.2d 1 (1985).
The appellant maintains that during the closing argument of the penalty phase of the trial, the prosecutor impermissibly stated that the killing was bizarre, that the victim was executed with precision, and that the appellant was a "predator." These were legitimate comments on the evidence presented at trial. A prosecutor may argue in closing any evidence that was presented at trial. He may also " 'present his impressions from the evidence. He may argue every matter of legitimate inference and may examine, collate, sift, and treat the evidence in his own way.' " Williams v. State,601 So.2d 1062, 1073 (Ala.Cr.App. 1991), aff'd without opinion, [Ms. 1901682, March 6, 1992] (Ala. 1992), quoting Donahoo v. State,505 So.2d 1067, 1072 (Ala.Cr.App. 1986). See Bankhead v. State,585 So.2d 97 (Ala.Cr.App. 1989), remanded on other grounds on rehearing, 585 So.2d 112 (Ala.), on remand, 585 So.2d 133
(Ala.Cr.App. 1991), aff'd on remand, 625 So.2d 1141
(Ala.Cr.App. 1992).
The appellant also contends that several other instances of prosecutorial misconduct resulted in his being denied a fair trial. We have reviewed these instances cited by the appellant and conclude that it "is unlikely that any impropriety in the State's argument could have affected the jury's verdict."Henderson, 583 So.2d 276, 287 (Ala.Cr.App. 1990), aff'd,583 So.2d 305 (Ala. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 1268, 117 L.Ed.2d 496 (1992).
 II
The appellant also contends that the prosecution unduly prejudiced him by offering into evidence a photograph of the victim's body showing the bullet wounds. "The fact that a photograph is gruesome and ghastly is no reason to exclude it from the evidence, so long as the photograph has some relevancy to the proceedings, even if the photograph may tend to inflame the jury." Bankhead, 585 So.2d at 109. The photographs were correctly offered into evidence because they showed the extent of the victim's injuries.
 III
The appellant also contends that the prosecutor violated the United States Supreme Court's ruling in Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.E.2d 215 (1963), by failing to disclose the negative results of a residue test performed on the appellant's hands after he was arrested. The appellant has failed to show that any violation of Brady occurred here. In order to prevail on a Brady claim, the appellant must show that the prosecutor suppressed evidence that was material and favorable to his defense. See Brady. As the state argues, the record reflects that the prosecution's files were open to defense counsel. Furthermore, the appellant admitted using the gun. No Brady violation occurred here.
 IV
The appellant further contends that the circuit court violated his Fifth Amendment rights by denying his motion to suppress *Page 997 
certain statements and by receiving into evidence various statements made by him.
First, the appellant contends that statements given to Officer Mike Harrell and Assistant Chief Charles Burge of the Jackson Police Department were inadmissible because he made the statements without understanding his Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights.
The state's evidence tended to show that on November 2, 1988, Officer Harrell discovered the victim's corpse in the rear of the appellant's white Porsche automobile. Harrell then read the appellant, who was standing next to his car, his rights as dictated by Miranda. The appellant, however, stated that he did "not really" understand his rights. In response, Harrell read each of the rights separately, asking the appellant, after reading each one aloud, if the appellant understood the right that had just been read to him. Each time, the appellant replied, "I think so" or "I believe so." Still concerned with the appellant's understanding, Harrell again read the appellant each right, one at a time, but, during this reading, he explained each one in "street language" after reading it. The appellant then stated that he understood his rights.
Further, when the appellant later indicated to Officer Harrell that he wanted to tell him what happened, the officer cautioned him that he did not have to say anything.
Later, at the Jackson Police Department, Assistant Chief Burge also informed the appellant of his Miranda rights. After reading the appellant his rights from a prepared index card, Burge repeated the rights one at a time and explained to him what each meant. The appellant then stated that he understood his rights. Further, the appellant signed a waiver of rights form before making any statement.
Both police officers testified that the appellant was not under the influence of any drugs, alcohol, or any other mind-impairing substances when he was read his rights, nor was he promised a reward for or coerced, threatened, or induced into giving a statement.
Before a confession can be received into evidence, the state must show that the appellant was read and understood hisMiranda rights and that the confession was voluntary. Carpenterv. State, 581 So.2d 1277 (Ala.Cr.App. 1991); Hutchinson v.State, 516 So.2d 889 (Ala.Cr.App. 1987); Moore v. State,469 So.2d 1308 (Ala.Cr.App. 1985).
The appellant argues that the officers rendered theMiranda warnings ineffective when they rephrased those rights in "street language." We disagree. Both Officer Harrell and Assistant Chief Burge testified that they read the appellant his rights as prescribed in Miranda more than once before explaining them to him in layman's terms. Further, it has been held on several occasions that a fully effective equivalent of the Miranda warnings will suffice. See, e.g., Siebert v. State,562 So.2d 586 (Ala.Cr.App. 1989), affirmed, 562 So.2d 600 (Ala. 1990), cert. denied, 498 U.S. 963, 111 S.Ct. 398,112 L.Ed.2d 408 (1990), and the cases cited therein.
Whether an appellant's confession is voluntary is a determination left to the discretion of the circuit judge and that determination will not be disturbed on appeal unless contrary to the great weight of the evidence and manifestly wrong. Hutchinson, supra; Minor v. State, 437 So.2d 651
(Ala.Cr.App. 1983). We must look at the totality of the circumstances surrounding the confession to determine whether it was voluntary. Lawhorn v. State, 581 So.2d 1159 (Ala.Cr.App. 1990), affirmed, 581 So.2d 1179 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991); Carr v. State,545 So.2d 820 (Ala.Cr.App. 1989).
After reviewing the facts as recited above, we find no evidence that the appellant made the statements to Harrell and Burge involuntarily. The circuit court did not abuse its discretion in admitting the statements.
The appellant further contends that the court erred by receiving into evidence a statement that he made to Michael Barnett of the Alabama Bureau of Investigation after invoking his right to an attorney. *Page 998 
The state's evidence tended to show that the appellant, after speaking with Assistant Chief Burge in the early morning of November 3, 1988, requested an attorney. On the afternoon of November 4, the appellant's parents asked Barnett if he would speak to their son. Barnett informed them that he could not because the appellant had requested counsel. After meeting with their son again, the appellant's parents told Barnett that the appellant wished to see him.
Before asking any questions, Barnett and the appellant read aloud together from a form that detailed his Miranda rights. Once Barnett was certain that the appellant understood those rights, Barnett read the waiver of rights form and, after explaining it carefully, he had the appellant sign his name. Upon signing the form, the appellant, in accordance with Barnett's instructions, wrote, "I requested to talk to the police officer today, November 4th, 1988. They advised me of my rights and I understand them."
Once the appellant has requested an attorney in accordance with his Miranda rights, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates furthercommunication, exchanges or conversations with the police."Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885,68 L.Ed.2d 378 (1981) (emphasis added). See also Herriman v.State, 504 So.2d 353 (Ala.Cr.App. 1987). Because the appellant initiated the conversation with Barnett, the circuit court did not err by receiving the statements made to Barnett into evidence.
 V
The appellant also argues that he was denied his constitutional rights when he was examined by state psychiatrists without being advised of his right to remain silent and without his attorney being notified. See Estelle v.Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). NoEstelle violation occurred here because the results of the psychiatric examination were not presented at appellant's trial.
 VI
The appellant next argues that his jury was selected from a venire that failed to reflect a fair cross-section of the community. He claims that less than 16% of the veniremembers were black and implies that the number of black citizens in Mobile County would exceed 16% of the total population.
The appellant has the burden of proof in establishing that a "fair cross-section" violation has indeed occurred. Pierce v.State, 576 So.2d 236 (Ala.Cr.App. 1990), cert. denied,576 So.2d 258 (Ala. 1991); Rayburn v. State, 495 So.2d 733
(Ala.Cr.App. 1986). See also Burleson v. State, 599 So.2d 1251
(Ala.Cr.App. 1992).
 "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion
of the group in the jury-selection process."
Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 668,58 L.Ed.2d 579 (1979). (Emphasis added.)
In the present case, the appellant offered no evidence either at trial or on appeal that would tend to support his allegation of a fair cross-section violation. Accordingly, he has failed to meet his burden in establishing a prima facie violation of the fair cross-section requirement of the Sixth Amendment.McMillian v. State, 594 So.2d 1253 (Ala.Cr.App. 1991).
 VII
The appellant also contends that the State used its peremptory challenges to exclude black veniremembers from the jury in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The record reflects that two black veniremembers were challenged for cause, four were challenged peremptorily by the State, and three black veniremembers ultimately sat on the jury. *Page 999 
The prosecutor explained his peremptory challenges as follows:
 "As to juror number 15, . . . He was struck for the reason that in response to a question from the Court he said that he had, 'Cut some people,' which would indicate that he personally had stabbed at least somebody at some point in his life.[1]
 "As to number 171, . . . According to the records of the Mobile Police Department, which we would like to make a Court's Exhibit, [juror number 171] at this time has an outstanding writ of arrest against him.
 "[A.C.] was juror 178. He was struck because he stated in response to a question from the Court, that he knew [was related to] a witness subpoenaed by the Defendant.
 "As to juror 183 . . ., he was struck because he, according to the records of the Mobile Police Department, has been arrested for harassment."
Each of the reasons presented by the State have been previously addressed and have been deemed to be sufficiently race neutral. E.g., Beavers v. State, 627 So.2d 1021 (Ala.Cr.App. 1991);Stephens v. State, 580 So.2d 11 (Ala.Cr.App. 1990), aff'd580 So.2d 26 (Ala. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 176, 116 L.Ed.2d 138 (1991); Allen v. State, 555 So.2d 1185
(Ala.Cr.App. 1989); Pollard v. State, 549 So.2d 593
(Ala.Cr.App. 1989). Therefore, the trial court did not err in denying the appellant's Batson motion.
For the foregoing reasons, the judgment in this case is due to be affirmed.
OPINION EXTENDED; AFFIRMED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.
[1] In response to the court's question regarding whether any veniremember had been the victim of a crime, number 15 stated: "Fighting, cutting, I've been cut. I've got cut and I've cut people."