Appellant, Albert D. Finch, a/k/a "Fat" was convicted of assault in the third degree and sentenced to twelve months in the county jail. After denial of his motion for a new trial, he appealed.
On November 17, 1981, Arthur Bishop, Jr., and a cousin, Matthew Miles, drove to Eutaw, allegedly to discuss a welfare matter with Bishop's wife. At that time the couple had been separated a little over a week. Mr. Bishop's uncle had seen Mrs. Bishop in Eutaw with appellant, so he informed Mr. Bishop, who subsequently went to the Eutaw Police Department for aid in finding appellant. Assistant Chief of Police Vernie Striplin took the two men to the poolroom owned by appellant, Albert D. Finch. Initially, neither appellant nor Mrs. Bishop was there at the poolroom; however, they drove up in front of the building shortly after Mr. Bishop arrived. Mrs. Bishop got out of the car and talked with her husband for a few minutes while appellant remained in the car. Officer Striplin testified that he did not know what was being said but that on one occasion he told Mr. Bishop and his wife to be quiet, since their voices had risen beyond conversational levels. The conversation terminated with Mrs. Bishop's apparently stating that she was going to go back to Tuscaloosa.
Mr. Miles and Mr. Bishop began their trip back to Tuscaloosa. While stopped at a red light, appellant and Mrs. Bishop passed in front of them. Mr. Bishop testified that he followed them because he had forgotten to give his wife a message from her grandmother. Mr. Bishop followed appellant to appellant's mother's house.
From this point the testimony is substantially in conflict.
According to Mrs. Bishop, who testified for appellant, Mr. Bishop was driving without his lights on. Once he arrived at the house, he turned on his lights, jumped out of the car and approached appellant. Mrs. Bishop said that Mr. Bishop walked towards Mr. Finch with his hands in his pockets, and although warned, as many as 3 or 4 times, "to get off their property" he "just kept walking with his hands in his pockets." At that time appellant fired a shot in the air, then a second shot was fired, allegedly only in the direction of the car. Mrs. Bishop heard only two shots.
The version of Mr. Bishop and Mr. Miles, which is apparently the testimony believed by the jury, is substantially as follows:
Mr. Bishop followed appellant to his mother's house. He pulled into the driveway just far enough to be off the black-top. After stopping the car, Mr. Bishop left his lights on and the engine running. Appellant and Mrs. Bishop had gotten out of appellant's car. As Mr. Bishop was getting out of his car, he called to Mrs. Bishop, stating that he wanted to talk to her.
Mr. and Mrs. Bishop started walking toward each other; however, when Mr. Bishop had gone only two or three steps, he saw appellant go to the back of his car, unlock the trunk, and reach in and get something out. Mr. Bishop then saw what he believed to be a pistol. At that time no *Page 966 
warning or conversation with Mr. Bishop had occurred.
Upon seeing the pistol, Mr. Bishop turned to go back and get in his car to leave. When he reached his car he grabbed for the window of the driver's door. It shattered from the first shot fired by appellant. That shot also apparently struck Mr. Bishop's finger. By that time appellant was running and had gotten even with the car. Appellant fired two more shots, to bring the total to three shots fired at or in the general direction of Mr. Bishop. One of the last two shots struck the rear door of Mr. Bishop's car as he was driving away. Upon leaving the scene, Mr. Bishop and Mr. Miles returned to the police station, where Mr. Bishop gave a statement.
After giving his statement, Mr. Bishop went to Greene County Hospital where Dr. Hullett removed metal fragments embedded in his finger.
The appellant contends that the jury's verdict was based on palpably insufficient evidence. He claims that his evidence of self-defense would bind the jury to return a verdict of not guilty.
In support of appellant's contention he cites Adams v. State,16 Ala. App. 93, 75 So. 641 (1917), and Blankenship v. State,11 Ala. App. 125, 65 So. 860 (1914).
We agree with proposition expounded in Blankenship, supra, that:
 "Self-defense is a common instinct and a natural right, and, as we understand it, means standing one's ground and repelling, as a means of self-protection, unprovoked force with force."
However, unlike Blankenship and Adams, supra, the case at bar does not involve appellant's duty vel non to retreat, since the alleged confrontation and assault occurred at the residence of the appellant. The defense counsel made no objection to any jury instruction given by the court, nor any motion to exclude at the conclusion of the state's case. Instead, the defense continued with the case by offering evidence of self-defense.
In the case of Graham v. State, 339 So.2d 110 (Ala.Cr.App. 1976), this court said:
 "While it has been stated that the plea of self-defense is not an affirmative plea of confession and avoidance on which the defendant carried the burden [citation omitted], it is unquestionably the law that once the State adduces sufficient evidence to make out a prima [facie] case, . . . in order for the defendant to be entitled to an acquittal on a plea of self-defense he must offer evidence which, when considered with all the other evidence, will produce in the minds of the jury, a reasonable doubt as to his guilt."
Contrary to what the appellant has implied, the evidence of self-defense as stated above, is controverted. The disputed material facts of self-defense arising out of testimony must be resolved by the jury. The jury is the judge of the facts, the demeanor of the witnesses, and their testimony. Consequently, in the instant case the jury obviously did not entertain a reasonable doubt that the assault was not done in self-defense. There was more than ample testimony for the jury to believe that the assault occurred and was perpetrated without the reasonable subjective belief that appellant's actions were for self-defense reasons.
It is our judgment that the trial was properly conducted without error, and the evidence supports the finding of fact and the conviction.
We have examined each issue raised by appellant. The circuit court's judgment of conviction is, therefore, due to be affirmed.
The foregoing opinion was prepared by Hon. CHARLES R. CROWDER, Circuit Judge, temporarily on duty on the court pursuant to § 12-2-30 (b)(6), Code of Alabama 1975; the court has adopted his opinion as its own.
AFFIRMED.
All the Judges concur. *Page 967