The appellant, Scottie Alton Johnson, was convicted of murder and of assault in the second degree. He was sentenced to life in prison and to 10 years in prison, respectively.
The state's evidence tended to show that Willie (Jay) Adams and his grandfather, James A. Floyd, were shot by a gunman who had been hiding in the bushes outside the Floyd residence. The gunman or an accomplice rang the doorbell at the victims' residence, and when the door opened, he fired a single shot from a 20-gauge shotgun into the Floyd house. The gunman was hiding in the bushes just outside the front door when he fired the shot.
Mr. Floyd testified that on April 22, 1991, the doorbell rang at his residence. He did not see anyone through the peephole, so he opened the door. When he opened the door, his grandson was standing slightly behind him and to his left. Mr. Floyd stated that he did not see anyone but that someone hiding in the bushes fired a shot. The majority of the shot hit Jay Adams in the face, and a few stray pellets hit Mr. Floyd. Jay Adams later died as a result of his wounds. Mr. Floyd was treated at the hospital and was later released.
The appellant was seen before the shooting by Kelvin McKree, who testified that he saw the appellant with the appellant's younger brother, DeeDee (Eric) Johnson. Eric Johnson had some shotgun shells with him and said, "We are fixing to go take care of some business." Mr. McKree also stated that the appellant gave a shotgun to his brother Eric, and that Eric hid the gun on a street corner in the neighborhood near the victims' house.
The appellant also told Edward McKree, Kelvin's brother, that he had a shotgun, and that he had shot Jay Adams. Edward McKree stated that the appellant told him that he had shot Jay Adams because Jay had informed narcotics agents about a drug deal. Edward McKree also said that the appellant admitted to hiding the shotgun he used.
Eric Johnson also testified. He stated that, on the night of the shooting, the appellant showed him some shotgun shells and that the appellant stated that they were going "to take care of business." Eric also testified that, before the shooting, the appellant picked up a shotgun from bushes alongside the road. He stated that he then walked with the appellant to a street corner near the victims' house, and walked away, leaving the appellant. Within minutes of leaving the appellant, Eric heard a "pop" coming from the direction where he had left the appellant.
Another state's witness, Kevin Smith, testified that Eric Johnson told him that he was going "to take care of business." Mr. Smith also testified that he had seen the appellant and Eric Johnson together on the evening of the shooting, approximately five or six blocks from where the victims lived.
Tyree Cochran saw the appellant after the shooting. He and the appellant were inmates together at the Southeast Alabama Diversion Center. Mr. Cochran stated that while he was sweeping the hallway floor at the center, the appellant slipped a note under his door and into the hallway. The note read:
 "Tyree, say that, that Monday before the shooting you saw Chill Will at the center and he ask you where Jay was you said. You said you didn't know and Chill Will say he was going to get Jay. Say — remember: light skin, dread locks, light blue car, name — Chill Will. Jay sold Chill Will 150 dollars worth of false dope."
Tyree subsequently turned this note over to the Diversion Center officials. Tyree also testified that the appellant discussed with him the possibility of his moving a certain gun that was then hidden in a ditch by a church.
 I
The appellant first contends that the trial court erred in denying his motion *Page 508 
for a judgment of acquittal made at the end of the State's case. Section 13A-6-2, Code of Alabama 1975, states, in pertinent part:
"(A) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person."
Intent may be proved by circumstantial evidence, Benton v.State, 536 So.2d 162 (Ala.Cr.App. 1988), and "[i]ntent may be inferred from the use of a deadly weapon." Scanland v. State,473 So.2d 1182, 1185 (Ala.Cr.App. 1985), cert. denied,474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581 (1985). See also Swann v.State, 412 So.2d 1253 (Ala.Cr.App. 1982).
 "A verdict of conviction will not be set aside on the grounds of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that the guilty verdict returned against the accused was wrong and unjust."
Brownlee v. State, 545 So.2d 151, 162 (Ala.Cr.App. 1988), aff'd,545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874,110 S.Ct. 208, 107 L.Ed.2d 161 (1989).
We find that the facts as recited above support a conviction for murder. The cause was correctly submitted to the jury for its determination.
 II
The appellant also contends that the State failed to present a prima facie case of assault in the second degree. The appellant argues, incorrectly, that the prosecution must prove both that the appellant caused injury to James Floyd by means of a deadly weapon, and that the appellant intended to causephysical injury to James Floyd. Section 13A-6-21(a)(2), Code of Alabama 1975, does not require such proof. The relevant section of that statute states:
 "(a) A person commits the crime of assault in the second degree if:
". . . .
 "(2) With intent to cause physical injury to another person, he causes physical injury to any person by means of a deadly weapon or a dangerous instrument."
(Emphasis added.)
The jury in this case could have reasonably believed that the appellant intended to cause physical injury to Jay Adams, and by shooting the gun did cause physical injury to James Floyd. We find that the prosecution met its burden of proof with respect to the assault charge. See Brownlee, supra. The court did not err in submitting the issue of assault in the second degree to the jury.
 III
The appellant further contends that his conviction should be reversed because an alternative theory as to who shot the victims existed. He relies on Jones v. State, 514 So.2d 1060
(Ala.Cr.App. 1987), cert. denied, 514 So.2d 1068 (Ala. 1987), which holds that when a conviction is based on circumstantial evidence, the test to be applied to determine the sufficiency of the evidence "is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether the circumstantial evidence excludes every reasonable hypothesis but guilt, but whether the jury might reasonably so conclude." Jones, 514 So.2d at 1067. Some evidence in this case is circumstantial; some is not.
The appellant certainly may present his own hypothesis to the jury. The jury, as the trier of fact, may or may not accept such theory. "The jury is the judge of the facts, the demeanor of the witnesses, and their testimony." Finch v. State,445 So.2d 964 (Ala.Cr.App. 1983).
 IV
The appellant contends that the statement he gave to the police was involuntary and, therefore, it should have been suppressed. Specifically, he claims that he was coerced and intimidated by both his mother and by Officer Jackie Mendheim, of the Dothan Police Department. *Page 509 
"The question of undue influence in obtaining admissions or confessions is determined by an examination of all attendant circumstances, with the inquiry focusing on whether the accused's free will and rational intellect were overborne at the time of his confession." Siebert v. State, 555 So.2d 772,776 (Ala.Cr.App.), aff'd, 555 So.2d 780 (1989), cert. denied,497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). See alsoHubbard v. State, 500 So.2d 1204, 1220 (Ala.Cr.App.), aff'd,500 So.2d 1231 (Ala. 1986), cert. denied, 480 U.S. 940,107 S.Ct. 1591, 94 L.Ed.2d 780 (1987).
The trial court found that the appellant's statement was voluntary. " 'A finding of the trial court as to the voluntariness of a confession, following a hearing outside the presence of the jury, will not be disturbed on appeal unless contrary to the great weight of the evidence and manifestly wrong.' " Griffin v. State, 500 So.2d 83, 87 (Ala.Cr.App. 1986), quoting Rush v. State, 397 So.2d 195, 197 (Ala.Cr.App.), writ denied, 397 So.2d 197 (Ala. 1981).
The general rule is that " '[e]xtrajudicial confessions areprima facie involuntary and inadmissible, and the burden is on the State to prove that the confession was made voluntarily.' "Ex parte Weeks, 531 So.2d 643, 644 (Ala. 1988), quoting Ex parteCallahan, 471 So.2d 463, 464 (Ala.), cert. denied,474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985). "The trial court need only be convinced from a preponderance of the evidence to find a confession to have been voluntarily made." Jackson v.State, 562 So.2d 1373 (Ala.Cr.App. 1990). See also Ex parteMcCary, 528 So.2d 1133 (Ala. 1988). Officer Mendheim, prior to taking a statement from the appellant, advised the appellant of his Miranda[1] rights, from the juvenile Miranda form. The appellant was also asked if he understood his rights, and he signed a waiver of rights form. During the hearing before the trial court, Officer Mendheim testified that neither he nor anyone else coerced or made any promise to the appellant prior to taking the appellant's statement. A review of the videotaped interview with the appellant shows that the appellant's "will was not overborne." The trial court did not err in determining that the appellant's statement was voluntary.
The appellant also contends that certain of Officer Mendheim's statements made during the appellant's interview rendered the videotape and its transcript inadmissible. Specifically, the appellant complains that Officer Mendheim told him that his version of the facts was unbelievable. A statement is not rendered inadmissible because the questioning officer takes the position that the accused is guilty of the crime in question. See generally Chambers v. State,455 So.2d 1008 (Ala.Cr.App. 1984).
The appellant's final argument with respect to the admissibility of the videotape and the written transcript concern a gap in the transcript, where the video camera continued to record when Officer Mendheim was absent from the interview room. However, this issue has not been preserved for our consideration. The appellant objected to the videotape's admissibility on the grounds that his statement was involuntary, not that there was any gap in its transcription. "[A]ll grounds of objection not specified are waived and . . . the trial court will not be placed in error on grounds not raised at trial." Helms v. State, 478 So.2d 9
(Ala.Cr.App. 1985); Reeves v. State, 456 So.2d 1156
(Ala.Cr.App. 1984); Wyrick v. State, 409 So.2d 969
(Ala.Cr.App. 1981). C. Gamble, McElroy's Alabama Evidence § 426.01(11) (4th ed. 1991).
 V
The appellant contends that the trial court erred in granting a challenge for cause. Mrs. Laura Woodham, a prospective juror, was challenged for cause because she stated during voir dire questioning that she did not think 16-year-old persons should be put in adult prison. Upon further questioning by the court, she stated that she would do her best to concentrate on the evidence, but that she still felt that 16-year-old offenders and adult offenders should not be put together in prison. No objection was made concerning this *Page 510 
challenge. The trial court acted in accordance with the law.
The grounds for challenging a prospective juror for cause are set forth in § 12-16-150, Code of Alabama 1975. Here, no specific statutory ground existed to strike this juror for cause, so an "absolute bias" on her part must have been shown.Jenkins v. State, [Ms. 90-1044, February 28, 1992], 1992 WL 71035 (Ala.Cr.App. 1992); Nettles v. State, 435 So.2d 146, 149
(Ala.Cr.App. 1983). It was shown.
 VI
The appellant also contends that the trial court erred by not striking prospective juror Beverly Thomas. Ms. Thomas indicated that her husband "is the victim's mother's second cousin."
Section 12-16-150(4), Code of Alabama 1975, mandates a challenge for cause if the prospective juror is connected by affinity within the fifth degree of the person or persons alleged to be injured. Here, the prospective juror's husband was related to the victim within the seventh degree of affinity, and the prospective juror was not struck for cause.
The appellant now contends that Ms. Thomas should have been struck because she is related within the fifth degree of affinity to the other victim in this case, James A. Floyd. The appellant did not object, or present this issue to the court in any way. No ruling was secured based on the relation of the prospective juror to the victim of the assault. This issue has not been preserved for our consideration.
We will not consider issues presented for the first time on appeal. Chevere v. State, 607 So.2d 361 (Ala.Cr.App. 1992); Patev. State, 601 So.2d 210 (Ala.Cr.App. 1992).
For the reasons set out above, the judgment in this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).