TAYLOR, Presiding Judge.
The appellant, Derrick Lavone Mount, appeals his conviction for felony murder, a violation of 13A-6-2(a)(3), Code of Alabama 1975. He was sentenced to life imprisonment.
The state’s evidence tended to show that on August 15, 1994, John D. Wilson, Sr., an 85-year-old man, was found seriously injured at the house of Douglas Stoudemire. Officer Mark Kyzar with the Opp Police Department testified that he arrived at the Stoudemire house at 7:45 p.m. and that he found Terry Stoudemire, Douglas Stoudemire’s grandson, and Wilson inside the house. Wilson had a laceration on his head and was bleeding. Kyzar testified that Terry Stoudemire told him that he had just come from a friend’s house and that when he arrived home he found Wilson on the steps of his carport. Wilson told Officer Kyzer that someone had taken his wallet.
Wilson was taken to a local hospital. Dr. Horace Sanders, the emergency room physician at Mizell Memorial Hospital in Opp, who treated Wilson, testified that Wilson had a three-and-one-half-ineh laceration on his head that was so deep it penetrated to the bone. The day after the attack, doctors determined that Wilson had a subdural hemato-ma caused by the blow to the head. Wilson died several days after surgery was performed to relieve the subdural hematoma. Dr. Alfredo Paradez, a state medical examiner, testified that Wilson died as a result of the hematoma caused by the blow to the head.
Douglas Stoudemire testified that he lives with his wife, Louise, and his grandson, Terry. John D. Wilson, Jr., testified that his father, the victim, owned rental property in Opp and that he was also in the business of lending money and cashing checks. He stated that his father often carried $1,000 to $1,500 in cash in his wallet. The victim had cashed cheeks for Louise Stoudemire in the past.
Susan Dee testified that on the evening Wilson suffered the injury, between 6:20 and 6:30 p.m., she had taken two telephone calls from someone asking to speak to her husband, John Dee, about cashing a check. She told the caller that he had telephoned the wrong person and that he needed to call John D. Wilson.
Louise Stoudemire was in the hospital on the day of the murder. Douglas Stoudemire testified that at approximately 4:00 p.m. on that day, he went back to his house and saw the appellant with his grandson, Terry.
John Christopher Lamar Austin testified that on the evening of the murder he drove by the Stoudemire house at around 7:30 p.m. and saw the appellant, Terry Stoudemire, and Nicholas Raybom. Austin testified that the appellant had a red “scarf’ on his head and that Terry had a blue “scarf” on his head. Austin further testified that a few minutes later he passed the victim, who was driving on highway 331. He stated that he *1011 thought it was unusual for “Mr. D.” to be out at that time of night.
Officer Marcus Nawlin, an investigator with the Opp Police Department, testified that he spoke with John D. Wilson, Sr., in the emergency room. Wilson told him that a man had telephoned him and asked him to come to Louise Stoudemire’s to cash a cheek. Wilson told him that as he was standing by the door to the house inside the carport, someone hit him from behind and he was knocked unconscious. He stated to Nawlin that when he woke he noticed that his wallet was missing. Later, the victim told his son that his attackers were black, and that one had a dark complexion and the other had a light complexion.
Carlos Lindsey, a Mend of the appellant, testified that he spoke with the appellant a couple of weeks after Wilson died. Lindsey testified that the appellant told him that he, Terry Stoudemire, and Nick Rayborn had waited for Wilson in the Stoudemire’s utility room and that they had planned to throw a sheet over Wilson and take his wallet. The appellant told Lindsey that when they grabbed Wilson he fell and they then ran away.
Chris Burnette testified that he and the appellant had become Mends when they were inmates in the Southeastern Juvenile Detention Center. Burnette stated that Mount had told him that he and some Mends had robbed “the richest man in Opp.” Bur-nette also testified that Mount told him that they had burned Wilson’s wallet.
I
The appellant contends that there was insufficient evidence to support his conviction. The appellant was convicted of causing the death of John D. Wilson, Sr., during the commission of a robbery, a violation of 13A-6-2(a)(3). The evidence in this case was largely circumstantial. This court addressed the principles an appellate court must follow in reviewing a conviction based on circumstantial evidence in Deutcsh v. State, 610 So.2d 1212 (Ala.Cr.App.1992). We stated:
“The most basic principles of review can be summarized as follows: 1) In determining the sufficiency of the evidence to support a conviction, the test is whether the jury, not this' court, might reasonably find that the evidence excluded every reasonable hypothesis but that of guilt. In other words, does there exist any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged? 2) The appellate court, in applying that test, must accept the evidence presented by the prosecution as true, must indulge all legitimate inferences in favor of the prosecution, and must consider the evidence in the light most favorable to the prosecution. 3) An appellate court may not reweigh the evidence presented at trial or substitute its judgment for that of the jury, except in those extreme situations when it determines that the verdict of the jury is wrong and unjust.”
610 So.2d at 1234.
Applying these principles to the evidence presented in this case, we find that the jury could have reasonably found from the evidence that the appellant was guilty of felony murder. John D. Wilson, Sr., told Officer Nawlin that he had received a telephone call from a man telling him to come to Louise Stoudemire’s house to cash a check. The appellant and Terry Stoudemire were seen at the Stoudemire home shortly before John D. Wilson, Sr., was found there. Carlos Lindsey, a Mend of the appellant’s, testified that the appellant told him that they had planned to lure Wilson to the Stoudemire house and take his wallet and that when they grabbed Wilson he fell. Further, Chris Burnette, testified that appellant Mount told him that he and some Mends had “robbed the richest man in Opp.”
The appellant also argues that the verdict is against the “weight” of the evidence. The question of the weight to be given to the evidence presented is strictly for the jury.
“The ‘weight of the evidence’ refers to ‘ “a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.” ’ Tibbs v. Florida, 457 U.S. 31, 37-38, 102 S.Ct. 2211, 2216, 72 L.Ed.2d 652 (1982). Bland v. State, 601 So.2d 521, 524 *1012 (Ala.Cr.App.1992); Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App.1989). Conflicting evidence presents a jury issue. Smith v. State, 583 So.2d 990 (Ala.Cr.App.), writ denied, 583 So.2d 993 (Ala.1991). ‘The jury is the judge of the facts, the demeanor of the witnesses, and their testimony.’ Finch v. State, 445 So.2d 964 (Ala.Cr.App.1983). Where facts are presented from which the jury could reasonably infer that the alleged crime has been committed, then the question must be submitted to the jury. Brandon v. State, 542 So.2d 1316 (Ala.Cr.App.1989). ‘The jury is then under a duty to draw permissible inferences from the circumstantial evidence presented and to base its verdict accordingly.’ Id. at 1318.”
Saffold v. State, 627 So.2d 1107, 1109 (Ala.Cr.App.1993).
II
The appellant further contends that he was prejudiced by an 18-day break in the trial. Testimony began on Friday, June 30, 1995. At the end of that day the court recessed until July 19, 1995. Aside from the July 4 holiday, the reason for the delay was that one of the jurors was going to be out of town until July 18. The trial judge court addressed the jury concerning the delay before the trial testimony began. He stated in part:
“And it is extremely important — and I cannot over-emphasize this, it is something you are going to have to do — you must avoid any outside influence or contact from anyone concerning this case whatsoever, whether it be a party, a witness, some member of the general public, just somebody you know, a neighbor. You can have no contact with anybody about this case. It doesn’t mean you can’t see other people when you are on break but you cannot talk about this ease with anybody.
“And if you do, what that will mean most likely is that we’ll have the kind of difficulties that will prevent the case from going to a conclusion. Because of the time frame involved I want you to be certain you understand that and have no doubt in your mind. I don’t usually admonish a jury this strongly, but you are just not allowed to
talk about this case with other folks and don’t do it.”
The trial judge gave another lengthy instruction before the jury separated, in which he stated, in part:
“Let me talk to you a few minutes before you leave for the day. Now while you are separated the law requires that you neither talk to, nor communicate, with anyone with regard to the facts of this case. Nor allow anyone, anyone at all, whether you think it matters or not, whether you think they have anything to do with this case or not [sic] ..
“You may [not] allow anyone to communicate with you or discuss the facts of this case with you in your presence. It would be improper for you to have any contact with any person which would in any manner tend to prejudice you either for or against the defendant, or for or against the state.
“Do not even discuss the case with your spouse or any member of your family or even a fellow juror. Now I’m sure when you go home someone might say Well what is the case about that you are on?’ And what you need to reply is that T am not allowed to talk about that; it’s going to be a big rigmarole if I do and I can’t do it. And I will tell you about it when it is over. But I can’t say anything about it in the meantime and don’t ask me about it.’
[[Image here]]
“And if anybody attempts to discuss this case with you or in your presence let me know about it immediately so that I can take care of it.
[[Image here]]
“Don’t speak with the parties or the witnesses. You are not to knowingly expose yourself to outside comments. And again I admonish you very strongly that you are not to read news accounts of these proceedings. There are apt to be some. Maybe and maybe not, you never know. It doesn’t mean anything about the case one way or the other if it shows up in the local paper. They have got to write about something. But just because it is in the *1013 local paper doesn’t mean you need to look at it.
“You are supposed to try this case on what you hear from the witness stand and you know more about it than anybody does anyway at this point that would be reporting about it from the outside. So you have got no cause to read news accounts of this proceeding and you are strictly instructed not to do that.
“You should not form or express any opinion on this case until it is submitted to you for deliberation. And you should not attempt to view the place where the alleged offense was purportedly committed.
“Now again, I have talked to you and want to apologize to you a little bit. I have talked to you in stronger terms than I usually talk, but it is because we are going to be separated for a while. I need you to remember and very strictly adhere to what I have told you to do. Because it’s the only way we can have a fair trial and it’s the only way we are going to complete these proceedings — if you abide by the rules. And I know you will, I have got every confidence in you. I don’t mean to sound like I don’t. If I just trip over it real quick it doesn’t make an impression. I want it to sink in with you.... ”
The trial court questioned the jury when the court reconvened on July 19, 1995, whether any of the jurors had any contact with or exposure to any source concerning the ease during the break. Each juror responded that he or she had not. Separation of the jury is permitted by statute and by the Alabama Rules of Criminal Procedure. Section 12-6-9, Code of Alabama 1975, states:
“In the prosecution of any felony case the trial court in its discretion may permit the jury hearing the case to separate during the pendency of the trial. The court may at any time on its own initiative or on motion of any party, require that the jury be sequestered under the charge of a proper officer whenever they leave the jury box or the court may allow them to separate. A motion to separate or sequester shall not be made within the hearing of the jury, and the trial court shall not be informed which party, if any, requested the separation or sequestration.”
Rule 19.3, Ala.R.Crim.P., states, in pertinent part:
“(b) Separation of Jurors in Noncapital Felony Trials.
“(1) In any prosecution for a noncapital felony, the trial court, in its discretion, may permit the jury trying the ease to separate during the pendency of the trial.
“(2) A separation of the jury so permitted under Rule 19.3(b) shall create a prima facie presumption that the accused was not prejudiced by reason of the separation.”
Although we do not believe that the 18-day break that occurred here was the kind of separation contemplated either by § 12-6-9 or by Rule 19.3, Ala.R.Crim.P., see Johnson v. State, 479 So.2d 1377 (Ala.Cr.App.1985) (jurors allowed to separate before being taken to hotel during sequestration); Trahan v. State, 450 So.2d 1102 (Ala.Cr.App.1984) (separation during short trial recesses and at the conclusion of each day’s proceedings), the appellant’s counsel recognized at trial that the separation of the jury was a matter left to the trial court’s discretion. Suspending trial proceedings is a function within the court’s discretion and is reviewable only for a “gross abuse” of that discretion, see Stokes v. State 13 Ala.App. 294, 69 So. 303 (1915). Also, the appellant has made no showing that he was prejudiced by the 18-day break in this case. The trial court gave very thorough instructions concerning the conduct expected of the jurors during the delay in the proceedings. The court also polled the jury when the proceedings reconvened. Although we do not condone the actions of the trial court, we hold that the trial court did not abuse its discretion here.
For the foregoing reasons, the judgment in this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.