The appellant, Danna Roxanne Pitts Read, was indicted for murder but was convicted of the lesser offense of manslaughter, under § 13A-6-3, Code of Alabama 1975. She was sentenced to 17 years in the state penitentiary and was ordered to pay $2,638 in restitution.
The state's evidence tended to show that on April 4, 1994, a fight occurred between the appellant and her husband, Gaylon Wayne Read, as the appellant was attempting to retrieve her possessions from the apartment she shared with Read and her daughter Roxanne. Roxanne testified that she was in her bedroom when she heard the appellant and Gaylon Read fighting. When she walked into the living room Read had a gun in his hand. She said that he yelled, "Back off or I'll shoot you and your mother." Roxanne testified that she ran down the hall and returned some moments later to find Read on the floor and the appellant standing over him with a gun in her hands. The appellant said, "You son of a bitch," and fired the gun at Read as he lay on the floor with his hands in the air. Read died as a result of a gunshot wound to his chest. In a statement to police, the appellant asserted that she shot Read because he had threatened her and she was afraid. Evidence was presented that Read suffered from cerebral palsy and was paralyzed on one side. He had no use of his right hand and was blind in one eye.
 I
The appellant initially contends that the jury's verdict, finding her guilty of *Page 565 
manslaughter was against the weight of the evidence.
 "The 'weight of the evidence' refers to ' "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other." ' Tibbs v. Florida, 457 U.S. 31, 3738, 102 S.Ct. 2211, 2216, 72 L.Ed.2d 652 (1982). Bland v. State, 601 So.2d 521, 524 (Ala.Cr.App. 1992); Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App. 1989). Conflicting evidence presents a jury issue. Smith v. State, 583 So.2d 990 (Ala.Cr.App.), writ denied, 583 So.2d 993 (Ala. 1991). 'The jury is the judge of the facts, the demeanor of the witnesses, and their testimony.' Finch v. State, 445 So.2d 964 (Ala.Cr.App. 1983). . . . . Where facts are presented from which the jury could reasonably infer that the alleged crime has been committed, then the question must be submitted to the jury. Brandon v. State, 542 So.2d 1316 (Ala.Cr.App. 1989). 'The jury is then under a duty to draw permissible inferences from the circumstantial evidence presented and to base its verdict accordingly.' Id. at 1318."
Saffold v. State, 627 So.2d 1107, 1109 (Ala.Cr.App. 1993). See also Mount v. State, 680 So.2d 1009 (Ala.Cr.App. 1996);Matthews v. State, 654 So.2d 66 (Ala.Cr.App. 1994).
There was more than sufficient evidence to present the case to the jury for their determination. Any questions concerning the weight to attach to the evidence were for the jury to resolve. The jury resolved those questions against the appellant.
 II
The appellant next contends that the trial court erred in failing to give several of her requested jury instructions. The record reflects that at the end of the court's instruction to the jury the following occurred:
"The Court: What says the State?
"Mr. Randall [prosecutor]: No objection.
"The Court: What says the defendant?
 "Ms. Turner [defense counsel]: Yes, sir. Judge, I guess what is best — I never put my numbers on it. I would just offer that and say that we would object that that charge was not given.
 "The Court: I will read the charge. I am going to sign them all, of course, and show that [they] were either denied or granted. Because this charge, as you've said, doesn't have a number, I will simply say you are referencing the charge that says, quote: 'I charge you, members of the jury that a simple assault accompanied by other acts or circumstances reasonably justifying the belief that it would be carried so far as to imperil life justifies the taking of a life in self-defense.' close quote.
"I deny that charge.
 "Ms. Turner: And that would be based on the case of Andre King v. State, Judge, which is, for the record, 478 So.2d 318. I don't believe — it could be I missed it — about the presumption of innocence. Was that charge given?
 "The Court: I said she's presumed innocent and the State has the burden of proof and so forth. Anything else?
"Ms. Turner: No, sir."
It is apparent that counsel preserved any argument only as to the denial of the instruction concerning self-defense. The trial court gave thorough instructions on self-defense. The concepts covered by the above-quoted material, which includes the requested instruction, were more than adequately covered in the court's thorough oral instructions to the jury. "A reversal will not be predicated upon the refusal of a requested charge where the import and intent of the defendant's requested charge is covered in the charge given by the trial court, even though the actual language of the request was not embraced within the court's charge." Donahoo v. State, 647 So.2d 24, 28
(Ala.Cr.App. 1994). See also Harris v. State, 513 So.2d 79
(Ala.Cr.App. 1987).
The appellant further contends that his trial counsel's performance was ineffective because she failed to object to the court's refusal to give the other requested jury instructions. In the motion for a new trial where the appellant was represented by different counsel, counsel alleged that appellant's trial counsel's performance was ineffective. However, no specific allegations were *Page 566 
included in the motion. At the motion hearing, the appellant raised this issue and her counsel contended that trial counsel's performance was ineffective in failing to object to the refusal of the court to give the requested jury instructions. However, no testimony was elicited as to how this failure prejudiced the appellant.
In order to prevail on a claim of ineffective assistance of counsel, an accused must show 1) that his counsel's performance was deficient and 2) that the accused was prejudiced by the deficient performance. Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Strickland test was not satisfied here.
 III
The appellant further contends that the trial court erred in receiving into evidence a videotaped statement she made to police. Specifically, she contends that the tape was offered solely as evidence of her bad character because it contained information that on the night before the shooting she had been at a poker game and had also been drinking.
The taped statement to police was certainly admissible to prove the appellant's intent at the time of the shooting. Although the appellant was ultimately convicted of manslaughter, she was indicted for murder. Intent is an element of murder and must be proven. The state offered the tape for that purpose. In the statement the appellant detailed her version of events on the night before the murder. She said that she had spent the night away from the apartment because she had been drinking and was drunk. She said that when she returned to the apartment the next day Read told her that he wanted her to move out of the apartment.
Normally, portions of a statement that contain evidence of collateral bad acts should be excised from the statement and not admitted into evidence. See C. Gamble, McElroy's AlabamaEvidence, § 200.15 (5th ed. 1996). However, this general rule does not apply in this case. In Smith v. State, 447 So.2d 1327
(Ala.Cr.App. 1983),
 "In a prosecution for unlawful homicide it is 'permissible to show all that transpired at the time of the difficulty and everything leading up to and explanatory of the tragedy.' Moulton v. State, 19 Ala. App. 446, 450 98 So. 709, cert. denied, 210 Ala. 656, 98 So. 715 (1923). Testimony is admissible if it 'tend(s) to prove the surrounding facts and circumstances leading up to and relating to the homicide.' Hill v. State, 25 Ala. App. 264, 265, 144 So. 582 (1932). '(E)vidence of connected acts leading up to and explanatory of killing, throwing light on action, animus, or intent of accused, is admissible, though not res gestae.' Smallwood v. State, 26 Ala. App. 360, 361, 159 So. 699 (1935). See also Palmer v. State, 401 So.2d 266, 269-70 (Ala.Crim.App.), cert. denied, Ex parte Palmer, 401 So.2d 270 (Ala. 1981).
 "The gambling and illegal alcohol sales were relevant to elucidate the circumstances of the shooting and to prove the defendant's intent. Keith v. State, 253 Ala. 670, 675, 46 So.2d 705
(1950). Evidence that the defendant's closing of the illegal activities he had sponsored in his home kindled the altercation which finally resulted in Dickerson's death was fundamental to the 'complete story' necessary for the jury to determine the defendant's intent. Durden v. State, 394 So.2d 967
(Ala.Crim.App. 1980), cert. quashed, Ex parte Durden, 394 So.2d 977 (Ala. 1981)."
447 So.2d at 1330.
No error occurred here.
 IV
The appellant also contends that the trial court erred in applying the enhancement provision of § 13A-5-6(a)(5), Code of Alabama 1975, because, she says, there was no finding that her actions were intentional. Section 13A-5-6(a)(5) provides a minimum sentence of 10 years imprisonment when a firearm is used in the commission of a class B or C felony. The appellant relies on the Alabama Supreme Court case of Ex parte McCree,554 So.2d 336 (Ala. 1988), where the court stated: *Page 567 
 "First, implicit in the language of § 13A-5-6(a)(5) — 'a firearm or deadly weapon was used or attempted to be used in the commission of the felony' — is the requirement that the underlying felony for which the defendant is convicted have, as one of its necessary elements, the element of intentional criminal conduct. Therefore, McCree's reckless or negligent conduct, which resulted in manslaughter, while sufficient to supply the criminal scienter to support a conviction for a Class C felony, does not require a finding that he intentionally used the firearm to commit the felony, and thus can not support the application of § 13A-5-6(a)(5). In other words, reading § 13A-5-6 as a whole, we must construe subsection (a)(5) to mean that convictions for those underlying felonies that are committed without the intentional use of a deadly weapon do not fall within the category of convictions that invoke the enhancement provision of this statute.
 "Second, 'enhancement,' as that word is used to describe the effect of § 13A-5-6(a)(5), necessarily means that in addition to the culpability of the offense for which the defendant has been convicted, the defendant's conduct is necessarily the result of a higher degree of culpability, because of the jury's finding that a 'firearm or deadly weapon was used or attempted to be used in the commission of the felony.' Indeed, the use of a deadly weapon to commit the underlying felony is the classic situation intended by the legislature to invoke the enhanced penalty.
 "Here, the jury returned a verdict of manslaughter. By virtue of that finding, that McCree recklessly caused the death of his friend, the jury eliminated the element of McCree's intentional use of a firearm as a means to take human life. The culpability of McCree for recklessness was established by the jury's verdict. Otherwise, the guilty verdict would have reflected a higher degree of unlawful homicide. (Indeed, the indictment specifically charged McCree with manslaughter under § 13A-6-3(a)(1) and not with a higher degree of criminal culpability.) Therefore, the trial court was without authority to sentence McCree under an enhancement statute that, by its terms, is invoked only by a degree of culpability higher than that for which McCree had been found guilty."
554 So.2d at 340-41 (emphasis in original).
Here, the jury was given the following charge on manslaughter:
 "Therefore, in order to convict the defendant of manslaughter in this case, the State must prove beyond a reasonable doubt each of the following elements of manslaughter: Again, that Gaylon Wayne Read is dead; again, that the defendant Danna Read, caused the death of Gaylon Wayne Read by shooting him with a gun; and, again, that in shooting him, she acted with intent. But in this case, the fourth element would be different in that in so acting she was lawfully provoked to do the act which caused the death of Gaylon Wayne Read by a sudden heat of passion and before a reasonable time for the passion to cool and for reason to reassert itself had elapsed."
The jury was not charged on reckless manslaughter. It is clear that the jury, in finding the appellant guilty of "heat-of-passion" manslaughter, found that the appellant's actions were intentional. Therefore, application of the firearm enhancement statute, § 13A-5-6(a)(5), was not error. Quinlivanv. State, 627 So.2d 1082 (Ala.Cr.App. 1992). As this court stated in Quinlivan:
 "There was no error in sentencing the appellant under the firearm enhancement statute. The jury verdict of guilt necessarily determined that the appellant engaged in intentional conduct. A heat-of-passion killing is an intentional homicide mitigated from murder to manslaughter 'if committed under a naturally engendering passion.' Ala. Code 1975, § 13A-6-2(b), Commentary at 151. The appellant's conviction rests on 'a degree of culpability higher than that for which [the accused in McCree] had been found guilty.' See Ex parte McCree, 554 So.2d 336, 341 (Ala. 1988); Mays v. State, 607 So.2d 347 (Ala.Cr.App. 1992); Woods v. State, 602 So.2d 1210 (Ala.Cr.App. 1992)."
627 So.2d at 1090 (emphasis and bracketed language in original). *Page 568 
This is not a situation here like the one this court faced inWard v. State, [Ms. CR-94-1787, May 24, 1996] ___ So.2d ___ (Ala.Cr.App. 1996), on remand, [Ms. CR-94-1787, September 27, 1996] ___ So.2d ___ (Ala.Cr.App. 1996), and in Jenkins v.State, 640 So.2d 1053 (Ala.Cr.App. 1993), where the jury was instructed both on reckless manslaughter and heat-of-passion manslaughter and the verdict form failed to distinguish between the two. The trial court correctly applied the firearm enhancement statute here.
The appellant further contends that her sentence of 17 years imprisonment was excessive and that the court abused it discretion in fixing her sentence. The appellant was convicted of manslaughter, a Class B felony for which the statutory range of punishment is not more than 20 years or less than 2 years. § 13A-5-6(a)(2). With application of the firearm enhancement statute the appellant faced a minimum of a 10-year sentence. The appellant's sentence of 17 years was well within the range allowed by law. As this court stated in Britton v. State,631 So.2d 1073, 1080 (Ala.Cr.App. 1993):
 "We find no error in the sentencing procedure. The sentence was legal and within the statutory range. Sentencing is within the exclusive realm of the trial court. Self v. State, 459 So.2d 978
(Ala.Cr.App. 1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1756, 84 L.Ed.2d 819 (1985); Brazell v. State, 423 So.2d 323 (Ala.Cr.App. 1982); § 13A-5-1. See also 24 C.J.S., Criminal Law § 1472 (1989)."
For the foregoing reasons, the judgment is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1100